May it please the court Michael Cox appearing on behalf of plaintiff appellant Hope Glenn as a personal representative of the state of Lucas Glenn and if I may I'd like to reserve two minutes for rebuttal your honor. We are here today to ask you to reverse the judgment of the district court that we feel denied the Glenn family their right to a jury trial of their claims. As this state law negligence claim. We believe we could prove to a jury that the police officers in this case acted unreasonably in causing the death of the Glenn son Lucas and that we should have the right to do that to prove that to a jury. Could I just ask you in organizing your argument under the 1983 claim could you distinguish this case from the oral which also used beanbags and see whether or not you think this case is favorable to you on clearly established law or can be distinguished I assume you'll take a position on that and and have but and the other question I have then goes to Oregon law which Mike I'm trying to understand whether Oregon law assuming for example that it was clear under the oral that for federal purposes Fourth Amendment purposes the I'm sorry let me clear enough to establish 1983 liability or if it was either way does Oregon law have a different standard in other words does it apply to police officer conduct a normal tort reasonable man standard of liability that would no matter how the federal law would treat this use of a beanbag under these circumstances that Oregon could pick up the negligence of the tort aspect that Judge Mossman referred to in the course of his opinion I'll start with your second question I think I understand what you're asking judge and I'll start with your second question I mean going back to the first question I'll come back to it we do believe the oral applies we do believe it's clear that it applies to the facts and circumstances of this case but going to your second question I don't think there's that there's any case law that has said that police officers are subjected to a different standard than the normal reasonableness standard that we apply to Oregon tort law in negligence cases but would that be the reasonable man be the perspective of the police officer or would be the bystanders that no I think that's an interesting question and it's not something we really discussed in the briefs and I know and that's why I find it strange that Oregon law would you know have an exemption under some circumstances at least from criminal liability for police officers who are exercising all of the judgments one has to carry out in these split-second highly-charged circumstances that there I haven't been able to find any cases helpful on this under Oregon law so that's why I'm asking right and that somehow the police officers aren't put in the circumstances that they have to confront at least when judging the reasonableness of their behavior that's something modified from a straight-up normal negligence standard right and I do think if you look at the sterling versus Albany case which is the one case we have been able to get you that they did apply a basically a straight-up reasonableness standard it appears in that case they didn't allow for special defenses of good faith or probable cause which the police officers argued for in that case and so we don't believe you know if you come to this defense of case we don't believe a criminal defense especially when the terms of that criminal defense as it's defined you do not state that it's a bar to civil liability that that anywhere applies to barring civil liability but instead you apply the Oregon standard of the reasonableness standard that we have here in this state and I think that you know you see it in some of the federal cases where they always talk and refer back to hey state law tort law is a lesser standard than we have under section 1983 even though we're both talking about reasonableness objectively reasonable over here in section 93 state law reasonableness we know that this is section 1983 is a much higher standard because of all the added verbiage the Supreme Court has created over the years and that there's a lot of other things you have to look at in analyzing a section 1983 claim that you don't necessarily have to look at in analyzing the Oregon state law negligence claim so we believe it's pretty clear that the trial court misapplied the standards in dismissing the Oregon state law negligence claim because it did so just basically on two things one well since we dismissed the 1983 claim we're dismissing the state law claim and number two we're gonna apply this justification defense that no words ever been applied as a defense to a state law negligence claim and which really is being used by the court when you read it to get rid of all the pre-shooting negligent conduct that's what the court wiped away with that and we don't believe you can do that under Oregon state law and I think Sterling versus Albany they analyze all the facts all the pre-shooting conduct I would go back now to I think this court is probably more interested in the section 1983 claim being the federal claim and go back to Dior and tell you why we think it applies and why we think the court erred and in not applying it but finding a distinction to move away from it that the district court moved away from it basically on one argument armed versus unarmed and they use that to suggest that Lucas Glenn somehow was a greater threat to the officers and the others in the area then mr. Dior was in his case I don't believe you can do that and in fact I think that the the the facts and circumstances of the Lucas Glenn case versus the facts and circumstances of the Dior case shows that Lucas Glenn is no greater threat than mr. Dior is to the the others or the officers in his case now mr. Dior doesn't have a weapon in his hand at the time has a can or a bottle but he's had weapons all over the property that are near him hatchet a crossbow a rail with protruding nails that he's repeatedly picked up and put down repeatedly picked up and put down he walked away from the in the last instance he's walking away from the crossbow toward the officer weren't accessible I don't think that was a part of the case I don't think ever determined that they were no longer accessible to him but that he didn't have them at that moment I think that you could read from the case that all those all those weapons are still there they're just laying on the ground somewhere on his property well your expert however went through and his analysis was that there were you know a lot of hasty judgments made here but he which was the taser now that's interesting because we have had in bank cases recently argued to us where the argument is that would essentially put taser on the same level or pretty close to a beanbag if the taser and we got well-educated on the foibles of tasers as to how they can be defective or you know they aren't as effective and what's troubling me in this case is your expert says well they could have gone to a taser you have a guy with a knife he's armed that's what judge Mossman kept focusing on that knife is not a small knife yes he's pressing in against his neck and he's inflicting self-damage but he's armed and he's got he's obviously being belligerent and non-cooperative so your expert says what they should have done done was try to calm them down and they had a lesser less lesser less lethal option if the taser isn't a less lethal option any better than the beanbag what would they have done then stabilize it well we we had pointed out there's actually even a better option than a taser the taser is our fallback argument our initial argument is using typical crisis intervention techniques questioning persuasion delay time those are weapons you use that involve intellect their argument is he wasn't responding to anything he was just totally agitated and out of control and he had a weapon in his hand and then we have to look at the record and draw the inferences as best we can for the plaintiff here and in doing so we can see all they did is create chaos in the three minutes and 44 seconds that transpired between when the first officer arrives and the lethal fire is shot they did not try questioning a persuasion they did not try that alternative all they did was scream and create chaos and they admitted themselves that Lucas Glenn may not have been able to hear or understand what they were saying amidst all this screaming and yelling okay so who was doing all the screaming and yelling just the two officers no then Lucas Glenn was doing some screaming and yelling as well parents were trying to talk him out of to put the knife down as well as his friend so what is the evidence that somebody with a calm voice would have suddenly resolved and de-escalated the situation we have it both in our expert report that said that those techniques to use the manual itself talks about that and there was the supervisor who advised them to breathe you know do all that right but the problem is at least under the law not the negligence law but the Fourth Amendment laws from the perspective of the officers we've been admonished time after time is that it's the officers perspective and Judge Mossman went through in a very careful way saying look these officers were confronted with somebody out of control he admitted that they were I mean he acknowledged these officers were not good at the way they set it up but what they were trying to do was to take down somebody in a non-lethal use of a weapon with the did they tried to knock him down they could have gone to the talk or they or they could have done something which even your own experts said a taser would have immobilized them theoretically well you know how does you know it's a difficult situation to be assessing after the fact right well I think that you got all the ground it's tragic I understand what you're saying but we think Judge Mossman actually did not consider all the facts and circumstances and he left out some very critical ones in part being that Lucas Glenn's demeanor changes throughout this confrontation that the statements he's making is you kill me or I kill me and yelling at the officers to his final statement which is why are you yelling at me which is a change in demeanor and shows that there is some progress being made here and in a plea to come in and have a negotiation with him or talk to them there is no reason to start shooting him with a beanbag gun at this moment in time he is he is showing a lot of compliance by remaining in the same spot he's not posing a danger to anyone else at this point because he's only holding the knife to his own neck he's not making any verbal threats to anyone else he's not brandishing a weapon toward anyone else as Dior did and Dior made verbal threats to other people as well he has no criminal history like Dior had he's actually showing less of a at the moment in time they pull the trigger on this beanbag gun the unanswerable question we feel for the other side and for Judge Mossman is why at this particular moment in time did this beanbag gun have to be deployed on him when we know from Dior you have to have a very strong governmental interest to do so now the Judge Mossman tried to knowing that there was some problems I believe with that he posed a threat of danger to others or the officers he from six to twelve feet away aimed at him he has no chance is it possible they might be entitled to qualified immunity on the beanbag shooting but not on the lead on the shooting of the guns that's an interesting question I haven't thought about I I believe that they are not entitled to qualified immunity on the beanbag itself right and then the question becomes once they deploy the beanbag and that the particular character of the movement they see and we can go into this recent Hayes case that I provided the site to the court recently the movement is in the threatening movement but as a movement to avoid the beanbags where he's turning his back and sliding away that that could somehow be interpreted as an attack I think there's a there's a good argument that they're not entitled to qualified immunity there either counsel if I can ask you a quick question yes judge if I recall he got shot eight times maybe they fired a dozen rounds or so how many of those shots that struck him hit him in the back we believe that there's arguably one that didn't wasn't the backside but was more of the side but at least seven of the eight struck him in the backside even though I think most people would say when you look at the forensic evidence that all eight struck him in the backside okay so so when when they used the definitely lethal force he wasn't running at them he was trying to get away at that time right that's that the jury can infer from the where the shots are located that he's not also running at the parents door as judge Mossman or the officer suggested but his back is toward them where they're lined up the shots would not hit him in the back if he's even running toward the parents door it would be in the direction where he's trying to escape this onslaught of beanbags in toward the alcove okay thank you thank you judge they please the court bill Blair representing defendants at the outset I would like to point out that the facts as outlined in our brief I cannot take credit for much as plaintiffs would like me to they are borrowed wholesale from judge Mossman's opinion well you know that if you read judge Mossman's opinion carefully he sometimes acts like a trier of fact rather than taking the facts in the light most favorable to the non-moving party I he makes findings in that order of his I cannot agree with that your honor well I don't agree with that but I'm just telling you that's the way I read his order he was this was a motion for summary judgment on the issue of qualified immunity and where there's any dispute of fact that's material to the outcome you take that fact in favor of the non-moving party yes agreed and and the reason I say I can't agree with with your proposition is that judge Mossman did so and you would have to compare the concise statement of material fact that we had presented with the facts found by judge Mossman you're not finding facts the facts as outlined by judge Mossman or as stated by judge Mossman I agree the the trial court's job is not to find facts it is simply to find disputes as to fact it's on this last point that judge Gould raised for example sure judge Gould pointed out that the that the forensics evidence would show or raise the question and counsel answered the forensic evidence would show that the bullets were entered in through the back yes now isn't there and there's a dispute as to whether he was headed towards the house where his parents were or whether he was headed away why judge Mossman said essentially said that he was headed towards the house where his parents were why isn't that a genuine tribal issue of fact at the time the judgment was made by the two deputies to fire lethal rounds Lucas Glenn was beginning to run and had taken a step or two toward the front door of the decision to pull the trigger he then Lucas in that split second Lucas Glenn turned and ran down a concrete walkway toward his grandmother's door now you're taking the facts in the light most favorable to the officers by giving that characterization I think everybody agrees that his path was from the corner of the garage toward the front door and then down the walk news to me well okay so given the oral why do we have any room wiggle room on clearly established since the oral is quite close to the facts of this case the URL with respect your honor is in very important respects different than the facts of this case the court in the oral found that the failure to give a warning was significant there were warnings given in this case well there's dispute as to whether he could possibly have heard them whether he heard them or not they were given well they were given the police cannot control what the person hears all they can do is act in accordance with their professional training warnings were given in the oral the plaintiff was not armed he had a pop can in his hand but it was in no way using that or threatening that as a weapon in the oral the distance was much greater and therefore the opportunity for the some other action much greater in the oral there was no direct was the relative distance but they were within 8 feet is that there is a dispute about the distance but I would certainly say that at the closest the plaintiff's argument is 8 feet and ours would be about 21 feet we have I take the plaintiffs okay but that that part is really not material and in comparing to the oral but as I understand it you said the distance was in the oral was much greater so we would take your facts and say that they were 21 he was 21 feet away okay and in the oral was much greater I believe the distance was something like 40 feet so how does that cut I'm having trouble distance equals time yeah and this is just simple physics the the speed and the distance at which is a threat moves toward a police officer is a significant factor for that officer in determining what actions to take in the oral there were no commands given the guy's 40 feet away he's not running he's just moving toward the officer and the officer backs up against a tree and fires a beanbag at him at a distance in which that shot caught the oral in the eye in this case the distance was the use of the beanbag was to maintain a safe distance for the highly agitated severely emotional was intoxicated and was brandishing a knife and not just a pocket knife but a significant weapon with a gutting hook on the end when you say brandishing he had a knife that was pressed against his own throat he had a knife that was pressed against his own throat he had taken that knife at one time stabbed it into the garage door and at another time was was that in front of the officers pardon did he stab it in front of the door in front of the officers did he stab him but then he said he yes Judge Fisher said it was at his neck yes and while the officers were there did he take that knife and go like this to the garage door I have to say I believe so but I do cannot I well that's another thing I don't recall that particular fact what you what you will recall is that there is that he pointed the knife in different directions as well as holding it at his throat well you just said he stabbed it into the garage door he did council I've got a question for you yes and I recognize this very difficult case difficult for Judge Mossman difficult for counsel on both sides and difficult for our panel but still it I come back to a few points that seem fundamental to me first of all before the police deployed the beanbag gun did did Lucas ever get a warning like okay put the weapon down now or you're gonna get shot with the beanbag gun because as I read this it seemed like someone like the cop the policeman from Tigard yelled out beanbag beanbag but that he wasn't given a clear warning you're going to be shot with a beanbag gun if you don't comply so am I missing something or did he just get shot with a beanbag gun without a warning there is no dispute that at least some reference to beanbag was made by the Tigard officer whether it was simply beanbag beanbag or whether it was as described by Tony Morales who was one of the friends of Lucas Glenn sitting on the ground or lying on the ground some distance away and watching the whole thing who said that the Tigard officer arrived said I have the beanbag and then said drop the knife or you'll be shot the other part to that is that before the Tigard officer arrived with the very visible shotgun two deputies were pointing their handguns at Lucas Glenn both of them ordering him to drop the knife and at least one of them telling him drop the knife or you will be shot I understand that but I'm just getting back to the beanbag again with Judge Pais' question and Judge Fisher's earlier it is a summary judgment and so if one witness says that the Tigard officer said drop the knife or you will be shot with the beanbag gun that's one bit of evidence but if someone else more favorable to the parent said all that was beanbag beanbag and he might not have understood that then on a summary judgment don't you have to take the version most favorable to the deceased two responses to that your honor first when a law enforcement officer who's pointing a gun at you says drop your knife or you will be shot my suggestion is that is reasonable warning and if you are later shot it's probably lucky that you were shot with the beanbag and not with a .40 caliber handgun but the second part of that answer is the decision as to when to fire and what in this case the only defendants are the two Washington County deputies and Washington County itself along with the sheriff so relating to that I'll just ask the final question then try to be silent for Judge Pais' question but that at the point they fired the lethal shots if the shots in general hit the deceased in the back it suggests that he's moving away from the officers that he's not closing on them so the idea of a short distance putting them at risk doesn't apply at all right if he's running away from them and the only question is was he running toward one of his relatives who he might have harmed the I would restate that question slightly your honor because we will never know what was in the mind of we will never know whether he made that movement to avoid beanbags we simply know and the officers simply knew at the time this person who has been standing there in an altercation verbally with us is now moved his position and is running toward a place where he is a threat to people in the house and it was that movement that motion that was the trigger of their decision to use lethal force in defense of the people in the house they know do they know that he's not like a roaming criminal but he's a high school student who's the son of the people in the house they know that he is the son of the people in the house and they know at the dispatch initially that they are being dispatched to a fight with a knife they know that he is yelling generally and perhaps intoxicated his age is certainly that of a young adult and he was they gave the data they gave over the dispatch I had the date of birth right I believe that is correct whether anybody did the math or not at least certainly he did not something like yeah certainly he didn't look 46 or 13 he was could I ask you a question you don't mind you you know the officer said had the gun pointed at him and said put the knife down or we'll shoot I forget the exact word something to that effect would have been proper for the officers to have shot him when he didn't put the knife down with the with the gun no no you had they would have had to do he would have had to taken some some something would more would have had to have happened yes it did in this case and your point is I get your so you're so by his movement after being shot with a beanbag in in your view was sufficient even though there's a dispute over where he was moving there well he wasn't moving towards them correct it is correct he was not moving they don't claim that they were trying to defend themselves when they shot him with the gun they were not trying to defend themselves when they shot him with the gun they were trying to defend the people that were in the house and the house because they knew that he had already kicked in the door of the house right that it couldn't be locked the family members were his mom and dad correct yes and grandmother in a the other in the room that he was running towards that at the time he fell they knew these things and they knew that there were weapons in the house while he was outside he couldn't get to them and once he become once he gets in the house he then has the potential for hostages he then has the potential for doing harm to these people the decision that they made was that exactly that sort of split-second decision that we should not view with 20-20 hindsight but a police officer is sometimes called to make in the field it was a little time because I would like you to address the Oregon law yes keeping in mind that as Judge Mossman pointed out there was a tremendous amount of inappropriate response before any of this unfolded because these guys showed up on scene this whole thing took place in four and a half minutes they were screaming and yelling they got information from their supervisor that they should breathe and take control of the situation that way Judge Mossman pointed that out and said that that's really something that might be relevant under tort law but not under federal 1983 law the argument being made is that under Oregon state law and I don't find you know sterling is a case I'm familiar with but aside from the sterling case it's not clear to me what Oregon law is vis-a-vis the negligence aspect of this but if tort law applies it seems to me that there's a whole lot of activity that even Judge Mossman acknowledged could be relevant to a state claim under Oregon law as to whether these guys were negligent in creating a confrontational situation that essentially created the situation that then caused them to a deploy the beanbag and then turn around within seconds and shoot him to death so it is it or is it not your position that Oregon law is the same as or is broader than 1983 law it is certainly different that okay so why in that case then is Judge Mossman's summary disposition saying it wasn't wrongful because I just found under 1983 law it wasn't wrongful why isn't that wrong and needs to go back for analysis under Oregon law I'm not sure that that's well I I would I understand Judge Mossman's opinion to be more nuanced than that we've discussed just briefly in our brief the Fasolari case which is the Oregon case that does away with the concept of duty breach causation and damages and simply says that absent some specific duty imposed by law person is obligated to act reasonably to prevent foreseeable harm applying that standard under Oregon law this situation was out of control before the police arrived that's why they were called in the first place it was a situation that they had to attempt to bring under control making tactical decisions on the fly and in split seconds so what is acting reasonably and what is foreseeable harm become extremely slippery concepts I think under Oregon tort law but the reason behind Judge Mossman's decision on the pendants or the supplemental state claim I think is that by having found that the actions of the deputies were constitutionally reasonable in other words that they were taken for the purpose of defending others from harm then the Oregon statutes on justification provide a basis for the affirmative defense which we pleaded and bear the burden on on summary judgments the affirmative defense of justification given that the cases cited in page 15 of our brief State v. Bates State v. Foster and Rich v. Cooper in which the Oregon Supreme Court takes largely the same position that the United States Supreme Court did in Graham v. Connor saying that the standard of care of a police officer in a highly charged rapidly evolving situation where you must make split-second decisions is not to be governed by 20-20 hindsight and deference is to be given to those tactical judgments of the officers. Counsel Judge Gould I have a question on your state law claim if Judge Fischer doesn't mind my proceeding. Assuming that we accept Judge Mossman's position on the 1983 claims and that both the claim against the officers is out and the Monell claim is out and that only state law claims remain then as a matter of federalism I take it that this Oregon Supreme Court if it wanted to could say we take a view of a wrongful death action in Oregon that's different than the way the Supreme Court of the U.S. views federal law right? The state court would be free to do that right? In other contexts the Oregon Supreme Court has done so several times. Okay now if that's true I thought we also had a precedent I'm sorry I can't recall the name something like Acre or Acre that says that if all the federal claims are gone and only state claims remain that a district court is supposed to give reasons on the record for why the court is going to exercise a supplemental jurisdiction over the state law and I didn't see here anything in Judge Mossman's opinion that addressed that issue that gave reasons for handling the state law claims if I'm right if I'm right that we have some precedent indicating that should have been done? I must confess first your honor that my understanding of that is limited and my understanding is that precedent applies at a rule 12 stage if federal claims disappear and the courts going to retain jurisdiction of the state claims there should be some reason on the record why it does so this is a summary judgment in which all issues are before the court both federal and state and a global decision is made so I frankly would not be sure Well he had discretion he could have said I've decided the constitutional claim and I declined to assert supplemental jurisdiction over the state law claim and I gather it wasn't this case did not start in state court so he would just decline jurisdiction over supplemental jurisdiction and then I imagine would the statute of limitations be told in state court? I believe it is So then they could go file their state law claim in state court and litigate it in state court? Yes Isn't that right? Yes But instead he chose to rule on the whole package He did And that's primarily because he thought that having resolved the federal constitutional claim on the merit he essentially said there's no constitutional violation here so that takes care of the state law claim With respect your honor again I think that is his basis was saying having resolved the federal constitutional claim and thereby determined that the conduct of the officers was reasonable That takes care of the state law claim That takes care of the state law claim on the justification issue primarily I think I can't read Judge Mossman's mind I wish I could Okay thank you counsel Thank you your honor Thank you your honors just clarify a couple quick issues that he did not stab the garage door when the police officers were there he held the knife to his own neck there never made any threats to the officers with a knife or anything like that on this record I was going to read to the court the movement that's described by the witnesses while being struck by beanbag rounds Luke put his hands down grabbed his pants and began to move away from the beanbag fire toward the alcove between the house and garage Luke was moving in the most obvious line of retreat from the fire after one or two steps by Luke defendants Gerba and Metesky fired their guns at Luke that's what you have in this record in regards to the movement and in regards to the warning the record you have before you is beanbag beanbag boom boom boom With no opportunity to comply fired immediately thereafter with no opportunity to comprehend what that's supposed to mean Although he was you will agree he was told yelled at anyway that if he didn't comply he'd be shot Earlier in the confrontation and we have different earlier we're only talking three Three minutes 44 seconds earlier in the confrontation there was a statement that's admitted in the record and undisputed that drop the knife or we're going to kill you Of that nature which is different in nature than being told we're using this weapon that's just to create pain compliance to get you to drop the weapon somehow It's not lesser would seem to be included Well, I think I think for a person who's standing there to hear that i'm going to be shot or if I don't don't if I don't Drop the knife is something like really versus we've got a different weapon We're going to use if you don't drop it We really will use this one that could have a different impact and that's why in hayes and deorley They're so adamant about you have to give this warning before you use this type of weapon. Okay. Thank you. Thank you council very difficult case Tragic and we appreciate the good arguments All right, we'll stand and um Adjournment, I guess
judges: Fisher, Gould, Paez